UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BENESSE R. SIMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13 C 6141 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| PATRICK R. DONAHOE, Postmaster General, | ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Current United States Postal Service ("USPS") employee Benesse R. Simpson, who is African American, filed suit against Postmaster General Patrick R. Donahoe for racial discrimination, retaliation, and harassment she allegedly suffered while working at USPS' Romeoville, Illinois facility in 2011. Simpson also claims USPS failed to promote her because of her race. Before the Court is Donahoe's motion for summary judgment [41][1] and Simpson's response to that motion [45], which was filed as a cross-motion seeking summary judgment in her favor.[2] Because Simpson cannot establish a *prima facie* case of race discrimination or show pretext with respect to the May 13, 2011 bathroom incident or the June 18, 2011 early dismissal incident, summary judgment is granted for Donahoe on those claims. Similarly, because

---

[1] Donahoe did not move for summary judgment on Simpson's failure to promote claim, which is clearly identified as a claim in Simpson's Amended Complaint. *See* Doc. 10 ¶¶ 12(c), 13, 16(c). Because the Court only has the parties' statement of fact that Simpson applied for but never received a promotion, with no argument from either party as to why this claim succeeds or fails, the Court has not addressed this claim in this Opinion and Order and it remains pending.

[2] Simpson's cross-motion for summary judgment purports to seek summary judgment on a claim that "2 U.S.C. § 441e violates her rights under the First Amendment." Doc. 45 at 1. Section 441e prohibits foreign nationals from making contributions in federal, state, and local elections. No such claim has ever been asserted in this litigation, and to the extent Simpson is attempting to assert such a claim, the Court deems it too late to do so. *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

Simpson has not demonstrated that her supervisor was aware of her protected activity before the June 18, 2011 incident and that incident does not qualify as an adverse action, judgment is entered for Donahoe on Simpson's retaliation claim. Finally, as Simpson does not present any argument with respect to her hostile work environment claim and there is no material dispute in the record as to any of the elements of that claim, summary judgment is granted for Donahoe on Simpson's hostile work environment claim as well.

## BACKGROUND[3]

Simpson began working at USPS in 1990 as a clerk at USPS' main post office location in Chicago. Over the years, she worked at various USPS locations as a city carrier and mail processing clerk. In May 2010, Simpson transferred to the Romeoville Post Office as a part-time flexible mail processing clerk. As a part-time clerk, the USPS guaranteed her only two hours of work per shift. Her responsibilities included preparing the mail carriers and ensuring mail was ready to leave the facility for dispatch. Her immediate supervisor at the Romeoville Post Office was Carol Johnson, who reported to the Postmaster, Chuck Keeney. Both Johnson and Keeney are Caucasian. From the beginning, Simpson believed Johnson was harassing and discriminating against her, including by singling Simpson out for being late to work.

On May 13, 2011, Simpson was working a lobby detail, assisting customers with a new point of sale machine. She had been in this detail position for approximately a month and was the only mail processing clerk selected for the assignment. While Simpson was working in the lobby, Johnson approached her and instructed her to use the supervisor's bathroom by the manager's office instead of the bathroom on the workroom floor. When Simpson asked about this change, Johnson told her that she was doing too much walking across the workroom floor.

---

[3] The facts in this section are derived from the Joint Statement of Undisputed Material Facts. All facts are taken in the light most favorable to Simpson, the non-movant.

2

The supervisor's bathroom was closer to the lobby than the workroom bathroom, which was inside the employees' locker room. The bathrooms were otherwise equivalent. Simpson believed, however, that Keeney was behind the change, as she had seen him watching her when she used the workroom bathroom. Keeney had also spoken to Simpson about a month before the change about her talking to other employees during work hours and instructed her not to talk to drivers while they were bringing in mail.

Simpson filed an Equal Employment Opportunity ("EEO") complaint after the May 13, 2011 incident. She also met with Keeney to complain about being told to use the supervisor's bathroom. She believed that she was being singled out for her behavior, as other Caucasian mail processing clerks were allowed to walk together and talk on the workroom floor without reprimand. Nonetheless, Simpson used the supervisor's bathroom for a week until her lobby detail ended. Her job duties and pay did not change, and none of her employment benefits were impacted by the bathroom incident.

About a month later, on June 18, 2011, Simpson was scheduled to work from 4:00 a.m. to 10:00 a.m. Around 8:00 a.m., after she had already worked approximately four hours, Simpson was sent home by Johnson after the two of them had a disagreement on the workroom floor. The disagreement started because Simpson refused to help a Caucasian co-worker, Shawn Griffin, take gurneys containing parcels out to the mail carriers. But Griffin had originally refused to help Simpson process parcels. When Griffin saw that Simpson was done processing parcels and had moved onto processing missent mail, Griffin asked her to help him, which Simpson refused to do. Griffin then informed Johnson of Simpson's refusal and Johnson, in turn, told Simpson to help Griffin. When Simpson asked for an explanation, Johnson told her instead to clock out and go home. Johnson later explained that she ordered Simpson to help Griffin because the work he

3

was doing was the most critical at that time of day, while what Simpson was doing at the time (processing missent mail) could wait until later. She sent Simpson home because Simpson protested her directions and argued with her on the workroom floor. Additionally, Simpson had asked to leave early that day because she was beginning vacation the next day.

Simpson filed another EEO charge with respect to this incident, alleging race discrimination and retaliation for making the May 2011 EEO charge. But Johnson claims to have first become aware of Simpson's EEO charges around July 13, 2011, when she received an email from USPS' ADR specialist. In the process of investigating Simpson's EEO charges, Johnson identified two employees she previously sent home early for failing to comply with instructions. One of those employees was Caucasian, while the other was African American.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light

4

most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

### I. Race Discrimination Claims

A plaintiff claiming race discrimination can prove her case under the direct or indirect method of proof. *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 & n.4 (7th Cir. 2009) (race discrimination). Simpson has not set forth any admissible direct evidence of discrimination, and thus the Court will proceed to analyze her claims under the familiar indirect method of proof set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under this approach, Simpson must show that (1) she is a member of a protected class, (2) she was meeting USPS' legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably. *Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 511 (7th Cir. 2012). If Simpson establishes a *prima facie* case, USPS must present evidence showing a legitimate, nondiscriminatory reason for the employment action. *Id.* Simpson must then present evidence showing that USPS' stated reason is pretextual. *Id.* at 511–12.

USPS does not contest that Simpson is a member of a protected class. For purposes of summary judgment, it accepts that she was meeting USPS' legitimate expectations. But USPS argues that Simpson cannot establish that USPS subjected her to an adverse employment action, that USPS treated similarly situated employees of a different race more favorably, or that USPS' stated reasons for its actions were actually a pretext for discrimination.

5

### A. Adverse Employment Action

In her deposition, Simpson identified two instances of adverse employment actions: being told to use the supervisor's bathroom on May 13, 2011 and being sent home early on June 18, 2011. "An adverse employment action is one that significantly alters the terms and conditions of the employee's job." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). An adverse employment action must be materially adverse, such as a termination or demotion, and not just a "mere inconvenience or an alteration of job responsibilities." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465–66 (7th Cir. 2002) (quoting *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001)). Although an adverse employment action could encompass "a material loss of benefits [or] significantly diminished material responsibilities," *id.* (quoting *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510 (7th Cir. 1999)), the actions of which Simpson complains do not rise to this level.

Being told to use a different bathroom during work hours for the remaining week of a job detail qualifies as a "mere inconvenience," particularly where even Simpson admits that the bathrooms were the same in all material respects. *Id.* The instruction to use a different bathroom did not change Simpson's pay or otherwise impact her benefits or job responsibilities. Thus, it is not an actionable adverse employment action. *See Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) (adverse employment action must be "more than a minor change in working conditions" because "[o]therwise every trivial personnel action that an irritable, chip-on-the shoulder employee did not like would form the basis of a discrimination suit"); *Johnson v. Olin Corp.*, No. IP98-1456-C-B/S, 2000 WL 1468480, at *11 (S.D. Ind. Sept. 29, 2000) (restrictions in time and length of plaintiff's bathroom use did not amount to adverse employment actions for which plaintiff could sustain age discrimination claim).

Simpson's being sent home early on June 18, 2011 also does not qualify as an adverse employment action. Simpson acknowledges that, as a part-time employee, she was only guaranteed two hours of work per shift and that she had already worked more than two hours that day. At the time Simpson was told to leave work, there were less than two hours remaining on her shift, and she was already planning on leaving work early. Although an adverse employment action may result when an employee's working hours are decreased, *see O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004) (decrease in employee's compensation constitutes a materially adverse employment action), Simpson cannot rely on that principle here where she was only guaranteed two hours of work per shift, *see Hill v. Potter*, No. 07 C 6835, 2009 WL 1732542, at *5–6 (N.D. Ill June 16, 2009) (plaintiff did not suffer an adverse employment action where there was no guarantee of work hours for employees on light duty, meaning that she could not show that USPS' actions in not providing her with eight hours of work had "significantly altered the terms and conditions of her light duty employment"). But even assuming that Simpson was subjected to an adverse employment action, her race discrimination claims fail for other reasons, as set forth below.

### B.    Similarly Situated Employees

To show that an employee is similarly situated, Simpson must demonstrate that the employee "(1) dealt with the same supervisor, (2) [was] subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) (citation omitted) (internal quotation marks omitted). In her response, Simpson states that there were other Caucasian clerks who could have performed the work Johnson asked her to do on June 18. But such speculation, without even naming the purported

individuals at issue, is simply not the kind of evidence that will defeat summary judgment. *See Oest*, 240 F.3d at 614 (a Title VII plaintiff's "own uncorroborated, conclusory statements that similarly situated co-workers were treated differently" is not enough to defeat summary judgment); *Anderson v. Office of Chief Judge of Circuit Court of Cook County, Illinois*, --- F. Supp. 3d ----, 2014 WL 4358476, at *7 (N.D. Ill. Sept. 3, 2014) ("Anderson's more general claims about favorable treatment by other white employees do not begin to establish that those employees were similarly situated to Anderson." (citation omitted)). Similarly, for the May 13 incident, while she says that she was the only African American clerk to use the supervisor's bathroom, she does not provide any specifics about non-African American employees who worked in the lobby from which the Court could determine whether these employees were similarly situated but treated differently. *See Durkin v. City of Chicago*, 341 F.3d 606, 614 (7th Cir.2003) (noting that it is plaintiff's, not defendant's, burden to prove that defendant treated similarly situated employees more favorably). The witnesses Simpson lists in her response are all identified as African Americans and thus cannot serve as comparators. Having failed to present concrete evidence of a similarly situated employee, Simpson's *prima facie* case fails on this ground as well.

  **C.** **Pretext**

Even if Simpson had established a *prima facie* case of race discrimination, her claim would still fail because she cannot demonstrate that USPS' stated reasons for the complained of actions are pretextual. To establish pretext, Simpson must demonstrate that "(a) the employer's nondiscriminatory reason was dishonest; and (b) the employer's true reason was based on a discriminatory intent." *E.E.O.C. v. Target Corp.*, 460 F.3d 946, 960 (7th Cir. 2006). "A plaintiff shows that a reason is pretextual 'directly by persuading the court that a discriminatory reason

8

more likely motivated the defendants or indirectly by showing that the defendants' proffered explanation is unworthy of credence.'" *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005) (brackets omitted) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). In determining whether an employer's explanation is honest, courts look to the reasonableness of the explanation. *See Duncan v. Fleetwood Motor Homes of Indiana, Inc.*, 518 F.3d 486, 492 (7th Cir. 2008); *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered.").

With respect to the May 13 bathroom incident, Johnson explained that the supervisor's bathroom was located closer to the lobby, which would keep Simpson from doing as much walking across the workroom floor and in turn limited Simpson's ability to talk to other employees on the workroom floor, something for which she had been reprimanded only a few weeks earlier. With respect to the June 18 incident, Johnson explained that she sent Simpson home because Simpson refused to comply with her instructions and became argumentative on the workroom floor. Simpson does not submit any actual evidence that race, rather than Johnson's stated explanations, was the real reason for being told to use the supervisor's bathroom and being sent home early on the one occasion. The Court does not sit as a "super personnel department that second-guesses employer's business judgments." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (citation omitted) (internal quotation marks omitted). Although Simpson may believe that Johnson acted inconsistently toward her when compared to non-African American employees, that mere belief is not sufficient to call into question USPS' proffered reasons for Johnson's actions. Thus, summary judgment is granted for Donahoe on Simpson's race discrimination claim.

## II. Retaliation Claim

Donahoe also seeks summary judgment on Simpson's retaliation claim. Simpson apparently contends that Johnson retaliated against her on June 18 for filing her EEO complaint in May related to the bathroom incident. As with her discrimination claim, Simpson may proceed under either the direct or indirect method to establish retaliation. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 537 (7th Cir. 2013). Under the direct method, Simpson must demonstrate that (1) she engaged in statutorily protected activity, (2) she was subject to an adverse employment action, and (3) there was a causal link between the protected activity and the employment action. *Id.* Under the indirect method, Simpson must first demonstrate that (1) she engaged in a statutorily protected activity, (2) she was meeting USPS' legitimate expectations, (3) she suffered an adverse employment action, and (4) she was treated less favorably than a similarly situated employee who did not engage in the statutorily protected activity. *Vaughn v. Vilsack*, 715 F.3d 1001, 1006 (7th Cir. 2013). Once a *prima facie* case is established, the burden shifts to USPS to offer a nondiscriminatory reason for the adverse action. *Id.* The burden then shifts back to Simpson to demonstrate that the proffered reason is pretextual. *Id.* Donahoe argues that Simpson's retaliation claim fails for several reasons, including that Simpson cannot establish that she was subject to an adverse employment action under either the direct or indirect method, and that Simpson cannot demonstrate that Johnson was aware of Simpson's EEO complaint until after the June 18 incident.

"The showing a plaintiff must make to set out an adverse employment action required for a retaliation claim is lower than that required for a discrimination claim; a plaintiff must only show that the employer's action would cause a 'reasonable worker' to be dissuaded from making or supporting a charge of discrimination." *Chaib v. Indiana*, 744 F.3d 974, 986–87 (7th Cir.

2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L.Ed.2d 345 (2006)). But even under this lower standard, the Court finds that its conclusion that being sent home on June 18 does not qualify as an adverse employment action for Simpson's race discrimination claim applies equally here. *See Burlington N.*, 548 U.S. at 68 ("petty slights or minor annoyances that often take place at work and that all employees experience" do not qualify as adverse employment actions; the action must be materially adverse).

Additionally, Simpson's claim fails because Simpson has not presented evidence to dispute Johnson's statement that she only learned of Simpson's EEO complaint in July 2011, after she had sent Simpson home. Although Simpson suggests in her response that Keeney and others were aware of her May 2011 EEO complaint, attaching emails to this effect, Johnson was not included on those emails nor do they indicate that Johnson was made aware of the EEO complaint before June 18.[4] "It is not sufficient that [an employer] could or even should have known about [an employee's] complaint; [the employer] must have had actual knowledge of the complaints for [its] decisions to be retaliatory." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668 (7th Cir. 2006) (alterations in original) (quoting *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004)); *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000) ("[A]n employer cannot retaliate when it is unaware of any complaints."). This knowledge requirement exists under both the direct and indirect method of proof, with "proof of retaliation under the indirect method presuppos[ing] that the decision-maker knew that the plaintiff engaged in a statutorily protected activity, because if an employer did not know the plaintiff made any complaints, it cannot be trying to penalize him for making them." *Tomanovich*, 457 F.3d at 668–69 (citation omitted) (internal quotation marks omitted). Because Simpson only speculates that Johnson knew of her EEO complaint before June 18, which is not enough in the face of

---

[4] Moreover, as Donahoe points out in reply, these emails were not produced in discovery.

Johnson's statement that she was not aware of it until July, Simpson's retaliation claim fails. *See Bass v. Joliet Public Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014) ("Speculation is no substitute for evidence at the summary judgment stage."); *Fabiyi v. McDonald's Corp.*, No. 11 CV 8085, 2014 WL 985415, at *13 (N.D. Ill. Mar. 13, 2014) (plaintiff did not present any evidence that supervisors were aware of protected activity and speculation about their state of mind was not admissible to resist summary judgment).

### III. Hostile Work Environment Claim

Donahoe also moves for summary judgment on Simpson's hostile work environment claim. To prevail on her hostile work environment claim, Simpson must show that (1) her work environment was both objectively and subjectively offensive, (2) the harassment was based on race, (3) the conduct was severe or pervasive, and (4) there is a basis for employer liability. *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). Donahoe argues that Simpson has not presented evidence to meet this standard, as the conduct that she contends was harassing is not objectively or subjectively offensive nor can it be considered severe or pervasive. Moreover, Donahoe contends that Simpson has no evidence that the actions of which she complains were motivated by race.

In her response to Donahoe's motion for summary judgment, Simpson did not respond to Donahoe's arguments on the hostile work environment claim. Instead, she only vaguely argues that she was being harassed by Johnson, without providing any evidence of how that harassment meets the requirements of a hostile work environment claim. At the summary judgment stage, the non-moving party must present facts showing a genuine issue for trial. *Insolia*, 216 F.3d at 598. By failing to respond to Donahoe's arguments regarding her hostile work environment claim or further presenting evidence of harassment, Simpson is deemed to have abandoned this

claim. *See Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003); *Titus v. Ill. Dep't of Transp.*, No. 11 C 944, 2014 WL 625700, at *3 (N.D. Ill. Feb. 18, 2014) ("The Seventh Circuit has 'long refused to consider arguments that were not presented to the district court in response to summary judgment motions.'" (quoting *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999))). Further, the Court finds that on the facts before it, Simpson could not prevail on a hostile work environment claim because nothing in the record demonstrates that her work environment was objectively or subjectively offensive or that any harassment she experienced was because of her race. Accordingly, summary judgment is granted for Donahoe on Simpson's hostile work environment claim.

## CONCLUSION

For the foregoing reasons, Donahoe's motion for summary judgment [41] is granted. Simpson's motion for summary judgment [45] is denied. Judgment is entered for Donahoe on Simpson's race discrimination claim as it relates to the May 13, 2011 and June 18, 2011 incidents, her retaliation claim, and her hostile work environment claim. Simpson's failure to promote claim remains pending. At the status hearing on April 29, 2015, the parties should be prepared to discuss how they want to proceed with Simpson's remaining claim.

Dated: April 27, 2015

_____
SARA L. ELLIS
United States District Judge

13